CELIA ROCKWELL v. JOHN D. ROCKWELL AND EDSON W. ROCKWELL.

*Dower—Deed in contemplation of marriage—Fraud—Estoppel.*

1. A widow is not estopped from claiming her dower in lands conveyed by her husband in contemplation of their marriage, and in fraud of her dower rights in case of such marriage, by reason of her knowledge of the purchase of the interest of some of the grantees by their co-grantees during her husband's life-time, and her failure to assert her *inchoate* rights of dower.

2. In this case complainant seeks to recover dower in lands claimed by defendants through a deed executed by her husband in contemplation of his marriage with her, and in fraud of her dower rights in case of such marriage, and not delivered until after such marriage, as she alleges. The defendants claim that the deed was executed before such marriage was contemplated, and was delivered to one of the grantees for himself and his co-grantees. And on a review of the evidence the Court find

in favor of defendants' claim, and that the title passed in fee to the grantees, and that defendants are entitled to hold the land freed from complainant's claim for dower therein, except as to an undivided one-fifth part of said land, which passed to the husband of complainant as heir of his son, one of said grantees, who died leaving no widow or issue.

Appeal from Cass. (O'Hara, J.) Argued April 25, 1890. Decided June 27, 1890.

Bill to declare dower in land alleged to have been conveyed in contemplation of marriage, and in fraud of complainant's rights in case of such marriage. Decree granting relief prayed for reversed, and dower right in one-fifth of the land declared, and case remanded for further proceedings in the court below. The facts are stated in the opinions.

*Orris P. Coffinberry* (*Pealer Bros.*, of counsel), for complainant, contended:

1. A controversy over the delivery of a deed involves the intention of the grantor, and all testimony bearing upon that question should be admitted; citing *Pangborn v. Ins. Co.*, 62 Mich. 642.
2. Complainant's theory is that her husband wrongfully sought to defraud her of her dower rights in his lands should she survive him, through the deed in question in this suit; and all of his declarations or admissions tending to prove such claim are admissible, while declarations in his favor must be excluded; citing *Van Fleet v. Van Fleet*, 50 Mich. 1; *Bear v. Stahl*, 61 Id. 203.
3. If the Court hold the conveyance good, Rockwell yet owned one-fifth of the land at his death as heir of his son Henry O., who left no widow or issue.
4. If complainant prevails, she should obtain a decree for her dower, and damages for its detention, with costs; citing How. Stat. § 5756.
5. Where a widow is compelled to resort to equity to obtain her dower and share in the estate of her husband, the court will retain jurisdiction for the purpose of disposing of the whole question of dower, *mesne* profits, and distribution; citing *Miller v. Stepper*, 32 Mich. 194; and when a bill is filed to determine

the right of dower, partition and assignment may be made in the same suit; citing *Brown v. Bronson*, 35 Mich. 419.

6. Where dower cannot be assigned without injustice or manifest injury to the widow or person or persons in possession, the court may adjudge money in lieu of dower; citing How. Stat. §§ 4245, 5768; *Brown v. Bronson*, 35 Mich. 421.

*Howell & Carr*, for defendants, contended:

1. The theory of the bill is that the deed is void as against complainant because not delivered until after her marriage, or, if delivered before, that it was in fraud of her rights; and she cannot question the genuineness of the deed, which is not in issue, but is admitted; citing *Bloomer v. Henderson*, 8 Mich. 395; *Barrows v. Baughman*, 9 Id. 213; *Wilson v. Eggleston*, 27 Id. 257; *Rhead v. Hounson*, 46 Id. 243.

2. The allegations in the bill will be construed as making no charge of dishonesty; citing *Hopson v. Payne*, 7 Mich. 334; hence the statement that the deed was not made until after the marriage will be construed with the statement that it was not delivered, and is not notice to us that the deed is disputed.

3. It was the duty of the husband to deliver the deed, and the defendants could have compelled such delivery; citing *Hill v. Bowman*, 35 Mich. 191.

4. Complainant's testimony is almost wholly statements by the grantor inconsistent with defendants' title, made after the deed was recorded, which statements are not admissible; citing *Moran v. Lezotte*, 54 Mich. 83, 90, 91.

LONG, J. The bill in this cause alleges, substantially, that on April 22, 1857, complainant intermarried with one Samuel R. Rockwell, at Brockport, N. Y.; that at that time she was a resident of that state, and before the marriage she received letters from one Hiram Richmond, then a resident of the town of Porter, Cass county, this State, urging her to marry said Rockwell, and giving many reasons why she should do so, and stating that he was the owner of a large farm in that township, adjoining his, and was a man of large means; that on April 10, 1857, she saw said Rockwell for the first time at her home in New York, and who then declared he had come to marry her, and asked her if she had received Rich-

mond's letters, and what she thought about his proposition; and that he then said to her that he was the owner of 200 acres of land in Cass county, and of personal property, and was worth at least $8,000; that soon after the marriage she removed with said Rockwell to his said farm in Porter, this State, and resided there with him on said farm for about six years, and from there removed with him to the village of Constantine, St. Joseph county, and there resided with him until his death, on December 16, 1884.

That at the time of said marriage said Rockwell had five children by a former marriage, and all of whom at that time were under 21 years of age, and one of whom, Henry Orville Rockwell, died in February, 1860; that at the time they resided on said farm Rockwell claimed it as his own, had the entire control of it, cultivated it himself, and marketed the crops, and exercised complete supervision over it in all respects; that the said lands were described as the south-west quarter, and the north-west quarter of the south-east quarter, of section 25, township of Porter, Cass county; that in the summer of 1858 said Rockwell flirted a paper in her face, which he called a deed, and declared that "if he had a woman whom he could not control he had her fixed," and told her "he would have it recorded then, and bring it to life;" that this was the first intimation she ever had that he claimed said land had been or would be conveyed, as he had always declared and claimed that the land was his, and did not then deny that the land was his, but threatened what he would do.

That in 1874 she found to her surprise a paper in the desk of said Rockwell, purporting to be a deed, dated February 15, 1857, purporting to convey said land to his children, George B. Rockwell, Francis M. Rockwell, John D. Rockwell, Henry O. Rockwell, and Edson W. Rock-

well, which deed purported to be recorded April 14, 1874; that about that time she and her husband had some trouble, and that he then executed his said threat, and put said deed on record; that said deed was made in contemplation of marriage with her, in fraud of her dower rights in case she married him, but she avers that it was not delivered to the grantees therein at any time until long after their said marriage, and was in fact in his possession unrecorded more than a year after their marriage; that said Samuel R. Rockwell had long been the owner of said lands in fee-simple when he married her, and if he ever conveyed them to any person it was long after his said marriage, or, if before, in fraud of her dower rights; that said lands are now claimed to be owned by the defendants, John D. Rockwell and Edson W. Rockwell, two of the sons of said Samuel R. Rockwell, by conveyance by deed and by inheritance, and who hold the same in two farms, each occupying and cultivating the portion held by him; that before the signing of this bill she made demand of her dower in said lands of said defendants, who refused to acknowledge any dower interest of the complainant therein.

The bill prays that complainant may be awarded her dower in said described lands, or a sum of money based upon the value of her dower interest therein, and that the interest of it be set apart for her during her natural life.

The defendants put in a joint answer, and admit that said Samuel R. Rockwell once owned the land described in the bill, but say that long before he knew the complainant, or contemplated marriage with her, he made the deed, and very soon after the death of their mother, the first wife of said Samuel R. Rockwell, he delivered the same to his oldest son, George B. Rockwell, for all the

grantees therein named; that by said deed said Samuel R.
Rockwell reserved a life-estate in said lands, and sub-
stantially the absolute control thereof, so far as the cul-
tivation thereof was concerned, but that after the grantees
grew up and became physically able to work, and able to
manage said farm, their father and complainant left said
farm, and moved to Constantine, as stated in the bill,
some time in the year 1863; that at that time the grantees
in said deed assumed absolute charge and control of it,
and managed it as their own, conveying to each other
until these defendants became the owners of said land by
conveyance from their co-grantees; that since taking said
farm in 1863, they have cleared about 40 acres of it, and
have taken the stone out of all the cleared land, have
built two new dwelling-houses, costing $4,500, and new
barns, granaries, and barracks, costing about $400, have
dug three wells, costing $200, set out an orchard of 160 fruit
trees, built fences, and made other permanent improve-
ments, which, with the barn now being built by said
John D., will cost at least $2,500; that they have made
permanent improvements of the value of at least $6,000;
that they were put upon the land with the full knowledge
of complainant, and under claim of absolute title publicly
made, and which was acquiesced in by complainant.

They deny the statements in the bill that said com-
plainant was informed by their father that he was the
owner in fee of said land, but allege that she was in fact
informed that he had a life-estate only in said lands; that
she knew of such deed at the time of her marriage, and
that after her marriage she for a long time had it in her
possession, and showed it to her neighbors, and both
before and after it was recorded mutilated it by altering
its dates, and erasing and rewriting names and dates in
it. They deny that it was made in fraud of dower, and
allege that complainant knew that they were intending to

buy the interest of their brothers in said land, and pay a large sum of money therefor, in reliance upon said deed, and that she made no claim whatever upon said land until the death of their father; that they, with complainant's knowledge and consent, bought out their brothers in 1874, paying therefor $2,000.

A general replication was filed, and the testimony taken before a special commissioner under stipulation. On the hearing other and further testimony was taken in open court. The court below on the hearing made a final decree granting the prayer of the bill, and fixing the value of the dower interest of the complainant in the premises, and giving the defendants an option to pay the same at the time and in the manner determined by the decree, or that the dower of complainant be set off, and defendants to pay the value of the use of the premises, which is fixed in amount by the decree; complainant to recover costs. From this decree defendants appeal.

The defendants claim that this deed was made in the year 1855, and prior to the death of the first wife, and delivered to George B. Rockwell by his father in the year 1856, to hold for the benefit of all the grantees named in the deed; that the deed was made under an agreement by Rockwell with his first wife so to convey, for the reason that the equitable title was in the wife, and the title only rested in Rockwell as trustee to her use, the land having been purchased with her money. The original deed was produced, and it bears upon its face evidence of alteration in its dates, and in the date of the certificate of acknowledgment, and from which it is impossible to determine the true date of its execution or acknowledgment. The deed was recorded April 14, 1874, and from the record the deed purports to have been executed February 18, 1856. The original deed presented here bears the date of February 18, 1857, but the figure

" 7," it is quite evident, was written over an erasure. It
purports also to have been witnessed by Anson Dibble
and D. P. Ward, and the certificate of acknowledgment
made by Anson Dibble, justice of the peace.

On the hearing in the court below there seems to have
been no controversy but that the signatures to the deed
were the genuine signatures of Dibble and Ward, and of
Samuel R. Rockwell. Mr. Dibble, it is shown, died
August 30, 1855, Mr. Ward died May 9, 1857, and the
first wife of Mr. Rockwell died September 2, 1856. If
the deed was executed in the year 1855, and delivered to
George B. Rockwell, for all the grantees named therein,
in 1856, then no claim can be made that it was executed
and delivered in fraud of complainant, for it is shown
conclusively that at that time Samuel R. Rockwell had
no acquaintance with the complainant; and the deed was
not made in contemplation of marriage with her, but was
made and delivered at a time when Samuel R. Rockwell
had full power to convey his property to his children.

The testimony given on the hearing in the court below
tends strongly to show that this deed was executed in the
year 1855. It can be reconciled in no other way without
the conclusion that not only the defendants' witnesses
have testified falsely, but that complainant's witnesses also
have committed the same offense. At the outset of the
examination of the witnesses for the complainant, it was
shown by their direct examination that Samuel R. Rock-
well stated to various parties that he made this deed
before his first wife died, and before he and his first wife
went to New York on a visit. There is some conten-
tion as to the time this visit was made to New York;
the complainant contending that it was in 1856, and the
defendants claiming it was in 1855. This does not, how-
ever, become very important; the material question being
as to the time when the deed was made. We need not

go over the testimony given upon this branch of the case. It is sufficient to say that we are satisfied that the deed was executed before Mr. Dibble; that he took the acknowledgment, and he and Ward witnessed it; and it is not disputed that Dibble died August 30, 1855; so that, if the deed was executed on February 18, it was the February of 1855. The testimony of the witnesses upon both sides of this controversy can be reconciled in no other way, except to hold that a great number of persons of apparent respectibility and standing in that community are either greatly mistaken or have given false testimony. Mrs. Rockwell, the complainant, testified that the body of the deed was in the handwriting of Samuel R. Rockwell. John Hartman and Gabriel Eby, each of whom had known Rockwell for years, and knew Dibble and Ward in their life-time, testified to the genuineness of the signatures of these parties to the deed. William Dibble, a son of Anson Dibble, also testified that the signature of Anson Dibble to the deed was his genuine signature. Other witnesses also testified to the same facts. Many of the witnesses on the part of the complainant, as well as the defendants, also testified to conversations with Samuel R. Rockwell, in which he stated he made the deed at the request of his first wife, and before the time of their going east. This is in keeping with the honesty of all the parties, and is not controverted by any fact, circumstance, or testimony worthy of notice.

The fact is also established by the evidence that the deed was delivered to the son George by Samuel R. Rockwell, for the use and benefit of all the other grantees, some time in the year 1856, and long prior to the time of any thought of marriage by Samuel R. Rockwell with the complainant. Some testimony was also given on the part of the defendants showing that soon after the marriage complainant was advised of the existence of the

deed, and that she stated she supposed when she married Rockwell he owned the farm, but she had found out that he did not, and that it belonged to the boys. It is also shown that the complainant knew of the several deeds passing between the sons by which the defendants in this cause procured their titles, and that she set up no claim then to the premises, and never made any claim ·until after the death of her husband.

It is also claimed, and we think with much force from the testimony given, that the lands in controversy were purchased with money belonging to the first Mrs. Rockwell, and that Samuel R. Rockwell held the land in trust for his first wife. It is claimed that the deed to Rockwell was made before resulting trusts in lands were abolished. This question does not, however, become material to the rights of the parties to this controversy.

The complainant's bill is grounded upon the claim that the deed was made in contemplation of the marriage of Samuel R. Rockwell with her, and therefore a fraud upon her dower rights in the property. This certainly is not sustained by the proofs. It appears that her husband left some property at his death, in the village of Constantine. That is not in controversy here. Defendants counsel call attention to the fact that the complainant found this deed among her husband's papers in his desk, and made several copies of it, which she exhibited to her neighbors and friends, as well as the original deed before it was recorded; and some claim is made that complainant was the only party interested in changing the dates from 1855 to 1857, so as to bring the date of its execution within the time of the contemplated marriage of the parties; but just how the deed came to be changed in its dates, or the motive in doing so, need not be inquired into, as we are satisfied of its true date before its alteration. The title in fee to these lands passed under this

deed in 1856 to George B. Rockwell, Francis M. Rockwell, John D. Rockwell, Henry O. Rockwell, and Edson W. Rockwell. The defendants acquired the rights in said premises by purchase of George B. and Francis M. Rockwell, and are entitled to such rights, as well as their own interests, freed from any claim of the complainant for dower therein.

It appears, however, that Henry O. Rockwell died intestate, leaving no widow or issue. At his death, therefore, his father, Samuel R. Rockwell, took an undivided one-fifth interest in fee in the premises, and held that interest as tenant in common with the defendants at the time of his death. In this one-fifth interest the complainant has a dower right.

Some claim is made that the complainant is estopped from making claim to dower on the ground of her acquiescence in the arrangement by which the defendants purchased the interests of their brothers; that she stood by and knew that they were paying large sums of money for such interests, and made no claim. This would not, however, operate to estop her from setting up such claim now. All these purchases were made prior to the death of her husband, and, her dower at that time being only a inchoate right, it was not necessary for her to assert her claim then.

The decree of the court below must be set aside. It is manifest to us, however, that there is no sufficient *data* from which decree can be made here which will satisfy the rights of all the parties. The property has been greatly increased in value by improvements made by the defendants. What the value of the premises is, aside from such improvements, is not made to appear. It is quite evident that the premises are so situate that they cannot be divided by metes and bounds, setting off one-fifth part, and then admeasuring dower therein, without

great injustice to the defendants. The cause will there-fore be remanded to the circuit court in chancery of Cass county to ascertain the value of the lands aside from the improvements made by the defendants, and upon one-fifth of such value admeasure out of the rents and profits thereof the dower interest of the complainant, in accord-ance with the provisions of How. Stat. § 5743. No costs in this Court will be awarded; complainant to recover the costs of the court below.

CHAMPLIN, C. J., GRANT and CAHILL, JJ., concurred with LONG, J.

MORSE, J., (dissenting). I am very loth to dissent from the conclusion of my brethren upon a question of fact, but I cannot do otherwise in this case and satisfy my sense of right and duty. One thing is clearly estab-lished: The marriage of complainant, who was then about 30 years of age, with Samuel R. Rockwell, the father of the defendants, was brought about by corre-spondence from her friends in Michigan, representing, among the other good qualities of the said Samuel R. Rockwell, that he was the owner of 200 acres of land, the farm now in controversy. Rockwell knew of these letters, and subsequently visited the complainant at her home in New York, and there confirmed by word of mouth this representation. Although a mercenary mar-riage is not to be encouraged by the courts, the fact remains that when a woman marries a widower with grown-up children, and he much older than herself, it is very much in human nature that she should look with some interest upon the pecuniary aspects of the match, and be governed somewhat by the ever-absorbing question of dollars and cents. It is to be expected, under such circumstances, that the idea of acquiring a comfortable home, and having a competent maintenance in her old

age, should enter more largely into the reasons for such a marriage than it would in the mind of a young girl who is sought by one more nearly of her own age, and just starting out in the strife for home and wealth. Upon the theory of the defendants, it must be that this elderly man, their father, was wooing the complainant under false pretenses, having already, as they claim, made, executed, and delivered to them this same 200 acres of land.

If I had never inspected the original deed in this case, it may be that I might have doubted the complainant's case; but, as it is, I have no doubt that Rockwell deliberately forged this acknowledgment of this deed, and the names of the witnesses to it, for the purpose of defrauding complainant, and that he did this after his marriage with her, and some years after, when they had begun to quarrel. It is a singular coincidence, to say the least, that the man Anson Dibble, whose name appears as the justice of the peace who took the acknowledgment, and also as a witness, should have been dead and out of the way, as was also the other witness, Ward, at the time the conveyance first became known to the wife, or any one else, save the sons of Rockwell, if they testify truly. Dibble died in August, 1855, and Ward, May 9, 1857. Rockwell married complainant April 22, 1857. The deed, as it now appears, bears date February 18, 1856. It is admitted that, to be genuine, this deed must have been made in 1855, as Dibble was dead in 1856. Rockwell's first wife was living in February, 1855, and if the deed was made then, as claimed, at the solicitation of this wife, the query naturally arises, why she did not join in the deed? But the date 1856, which occurs in three places, has certainly been written over an erasure, and it is also plain that at some time the figure "7" has been in all three of the

places, and erased, and the figure "6" put in 'its place. This is plainly to be seen by the naked eye, and is admitted by the defendants. But they say, " for aught we know, the figure '5' was first there, and erased, then '7' written over it, and then '7' erased, and '6' put in its place." But the closest examination under the strongest glass fails to show any sign whatever of a figure 5 ever having been in either of the three places, and from the manner in which such figure must be made the erasure ought to show, if it had ever been there. But the figure "7" has had the lateral mark at the top erased, and at the bottom of the straight line thus left "6" has been made by adding a half circle to the straight line. If a figure "5" had ever been there, there would be an erasure certainly at the top to the right of the straight line, and probably at the bottom also. But there are no erasures at the bottom nor at the top to the right of the perpendicular mark.

The theory of the complainant is that Rockwell first made this deed after Ward and Dibble were both dead, and dated it back to a time between the death of his first wife and his remarriage, and about two months before his marriage. Finding out afterwards that Dibble was dead in 1857, he dated it back again, but still did not get it far enough to come within the life-time of the justice. There is evidence in plenty to support this theory. The complainant first saw this deed in Rockwell's desk some time in the year 1873 or 1874, at which time she swears all the dates were 1857. She made a copy of it at the time, showing these dates. She also exhibited the deed to others, who corroborated her as to the dates being 1857. The deed was not recorded until April 14, 1874. When recorded the two first dates were 1856, but the last date, being probably overlooked in the first

alteration, was 1857, as shown by the records in the register's office. Since such record this last date has been altered from 1857 to 1856.

Examining closely the body of the deed, which is admitted to be in the handwriting of Samuel R. Rockwell, and also the purported signatures of Dibble and Ward, it will be found that every letter, capital or other, in the name of D. P. Ward or Anson Dibble, finds its counterpart in the body of the deed. They are all Rockwell's letters, without doubt. The capital W's in the body of the deed are of the same make as the capital W in Ward. The capital D's in the body of the deed are the same as the capital D's in Dibble and D. P. Ward, though attempted to be disguised somewhat. So it is with every individual letter in both signatures, and which I have taken pains to compare. Some of them are not disguised at all, though both signatures are written evidently laboriously to disguise or counterfeit.

. We have also in evidence the genuine signature of Anson Dibble to a deed which he himself drafted from beginning to end. In it are eight capital D's, and not one of them is the D found in his purported signature to the Rockwell deed. Nor is his signature appended to the genuine deed the same, by any means, as that affixed to the deed in question here.

Another singular coincidence is found in this deed. The last part of Dibble's name, the "ble," has been tampered with or altered, and identically the same in both his signatures as justice and witness. It looks as if the word was at first misspelled, and then corrected. The theory of the defendants is that Mrs. Rockwell has made these alterations at different times to carry out her theory. This suggestion to me is preposterous. I care not if the son of Dibble and others testify that they think it is his genuine signature. The ear-marks of the

transactions are such, and the deed itself bears on its face such evidences, that I am constrained to believe that it is better and safer to trust these external evidences of words and figures than the remembrance and opinion of witnesses as to the handwriting of these persons, so long ago that even the son of Dibble has forgotten the year in which his father died. Besides, if the complainant, and other witnesses sustaining her, have not deliberately perjured themselves, and she added forgery to perjury, there is plenty of testimony to support her theory. From all there is in the case, the written documents, and the character of herself and Rockwell, as shown by their conduct through all the years of their married life, and her demeanor since her widowhood, I must fain believe that Rockwell is the one guilty of all this iniquity that appears in relation to this deed, rather than this woman.

The circuit judge was right, and his decree ought to be affirmed.